**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DARK MODE LLC d/b/a 404 MEDIA<br>*Plaintiff,*<br><br>v.<br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT<br><br>*Defendant.* | Civil Action No. 1:25-cv-003357 |

**DECLARATION OF KENNETH N. CLARK, Ph.D.**

## I. INTRODUCTION

I, Kenneth N. Clark, Ph.D., pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Assistant Director of the Office of Information Governance and Privacy ("OIGP") at U.S. Immigration and Customs Enforcement ("ICE"), a component of the U.S. Department of Homeland Security ("DHS"). I have held the Assistant Director position since August 18, 2019. Prior to this position, I served as Deputy Assistant Executive Director for the Law Enforcement Information Sharing Initiative in the Homeland Security Investigations directorate.

2. OIGP oversees the management, sharing, protection, and disclosure of ICE data and information in accordance with law, policy, and standards. OIGP implements the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, at ICE and collaborates with ICE and DHS partners to build privacy protections into ICE programs and systems and to develop data governance solutions.

3. OIGP is comprised of two units: the ICE FOIA Unit and the ICE Privacy Unit. As Assistant Director, I oversee both units. The ICE FOIA Director leads the ICE FOIA Unit and

reports to me, and ICE FOIA staff are organizationally located within that unit in OIGP. Through the ICE FOIA Director, I receive regular briefings on FOIA staffing levels, workload, backlog, and litigation demands, and I am involved in decisions regarding FOIA resource allocation and prioritization. As a result, I am familiar with the day-to-day operations and litigation workload of the ICE FOIA Office.

4. My official duties and responsibilities as the Assistant Director include the general management, oversight, and supervision of the Office of Information Governance and Privacy. In that capacity, I am the ICE Senior Executive Service official responsible for directly supervising the ICE FOIA Director, who in turn, supervises two Deputy Directors. The Office of Information Governance and Privacy's responsibilities include responding to requests for records under the FOIA, the Privacy Act, and other applicable records access statutes and regulations. The ICE FOIA Director and two Deputy Directors manage and supervise a staff of ICE FOIA Paralegal Specialists and contractors, for the processing of FOIA and Privacy Act requests received by ICE. Due to my experience and the nature of my official duties, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act.

5. The statements in this declaration are based on my personal knowledge, my review of records maintained in the ordinary course of ICE business, and information provided to me in the course of my official duties by personnel within OIGP and the ICE FOIA Office.

## II. PROCEDURAL HISTORY OF THE PLAINTIFF'S FOIA REQUEST AND THE INSTANT LITIGATION

6. On October 22, 2024, ICE FOIA received a FOIA request from Joseph Cox, Muckrock News, seeking "invoices, purchases orders, contracts, loan agreements, procurement documents (but not limited to solicitation documents or notices of proposed contracts, proposed

bids, unsolicited proposals, and/or documents justifying contracting without full and open competition), and statements of work relating to Award ID 70CTD024P00000012."

7. On October 25, 2024, ICE FOIA acknowledged the submission of the FOIA request and assigned it ICE tracking number 2025-ICFO-03255.

8. On September 23, 2025, Plaintiff filed the Complaint in the instant case in the United States District Court for the District of Columbia for declaratory and injunctive relief.

9. The agency made two productions of responsive records to Plaintiff, the first on May 26, 2026, and the second on July 2, 2026. Each production included a cover letter summarizing the FOIA exemptions to disclosure invoked by the agency. Throughout the productions, the agency invoked FOIA exemptions pursuant to (1) 5 U.S.C. § 552(b)(4) ("Exemption (b)(4)"), which exempts from disclosure records concerning trade secrets and confidential commercial information; (2) 5 U.S.C. § 552(b)(5) ("Exemption (b)(5)"), which exempts from disclosure inter- or intra- agency records that are normally privileged in the civil discovery context; (3) 5 U.S.C. § 552 (b)(6) ("Exemption (b)(6)"), which exempts from disclosure records implicating personal privacy; (4) 5 U.S.C. § 552(b)(7)(C) ("Exemption 7C"), which exempts from disclosure records compiled for law enforcement purposes implicating personal privacy; and (5) 5 U.S.C. § 552(b)(7)(E) ("Exemption 7E"), which generally exempts from disclosure records compiled for law enforcement purposes, the release of which would disclose techniques, procedures or guidelines that could reasonably be expected to risk circumvention of the law.

10. Plaintiff has represented through counsel that it challenges only the agency's application of Exemptions (b)(4), (b)(5), and (b)(7)(E) to specific pages in the productions to

include the only the records at Bates numbers 2026-ICLI-00002 000001-2, 5-14, 23-26, 45-57, 174, 221-235, 260-272, and 277-320.

11. The agency will produce to Plaintiff a supplemental production lifting Exemption (b)(5) from portions of previously produced records at Bates numbers 2026-ICLI-00002 000261-267 and Exemptions (b)(4) and (b)(7)(E) from portions of previously produced records at Bates numbers 2026-ICLI-00002 000012 and 000023.

12. Based on Plaintiff's representations through counsel, the agency understands Plaintiff makes no challenges to the agency's search or the application of Exemptions (b)(6), (b)(7)(C), or (b)(7)(F) to the responsive records.

## III. ORGANIZATION OF THE *VAUGHN* INDEX

13. Pursuant to the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), a Vaughn Index accompanies this declaration; the Vaughn Index provides a description of each redaction and the corresponding FOIA exemption being applied

14. The *Vaughn* index is in a table format. The first column contains the Bates number prefix for the records produced. The second column contains Bates stamp suffix (page numbers) of the responsive records. The third column describes the category of withholdings taken on the documents (full or partial). The fourth column contains the underlying information and provides justifications for the asserted exemption. The fifth column describes the redaction codes, which are citations to the sections of the FOIA Exemptions.

15. The *Vaughn* index encompasses the 41 pages on which Plaintiff challenges the agency's applications of exemptions (b)(4) and (b)(7)(E). A complete description of these documents, and the basis for the withholdings of information in them, is detailed in ICE's *Vaughn* index. Generally, they include documents containing proprietary information submitted

by Paragon to ICE about its product, acquisition documents, and descriptions about how the product could be used in law enforcement operations.

## IV. APPLICABLE FREEDOM OF INFORMATION ACT WITHHOLDINGS

### A. FOIA Exemption 5 U.S.C. § 552(b)(4)

16. 5 U.S.C. § 552(b)(4) protects "trade secrets and commercial or financial information obtained from a person that is privileged or confidential." This exemption is designed to safeguard proprietary business information submitted to the government under an assurance of confidentiality, ensuring that the competitive position of private entities is not compromised by public disclosure.

17. Here, ICE has applied Exemption 4 to proprietary financial and commercial information provided by the submitter (Paragon), a for-profit corporation, to ICE. The information provided by Paragon is in response to ICE's proposal to enter into a contract with Paragon to acquire "a fully figured comprehensive solution that includes all professional expertise, materials, hardware, software licensing, license maintenance, technical support on premises system configuration, premium care warrant/ maintenance and on sight training in a unique proprietary solution" ("the product" or "the solution" or "services") for use by Homeland Security Investigations (HSI).[1] Specifically, Exemption 4 was applied to Paragon's pricing narrative; nonpublic technical and product specifications; information about the product features, capabilities, and performance; work-product version numbers and descriptions of how the corporation monitors risks and updates security features. The exemption was also applied to corporation's product design, development, marketing strategy and details about the product's performance.

[1] *See*, Sole Source Justification: Simplified Procedures for Certain Commercial Items Exceeding SAT, Including Brand Name, 2026-ICLI-00002 at 23.

18. The withheld information is commercial or financial in nature because it concerns the corporation's product, business operations and competitive position in the marketplace. Specifically, the withheld information pertains to nonpublic pricing information, product specifications, technical details, product features, functionality, capabilities and performance information. The information reflects the corporation's commercial activities including the development, sale, pricing and promotion of a revenue-generating product. Disclosure could reveal nonpublic aspects of the corporation's business methods, product offerings, pricing approach, and competitive strategy to competitors or customers.

19. The corporation applied restrictive markings to the documents and does not make the information publicly available. Its documents are clearly and repeatedly marked as "confidential" and "proprietary". The document titled "Release Notes" bears the restrictive marking "This document is proprietary and contains confidential business information. It should not be viewed by or otherwise shared with any party other than the intended recipient" on the front cover page, as well as the restrictive marking "PROPRIETARY – CONTROLLED" at the bottom of every page thereafter. The documents titled "Pricing Narrative 1.3.7" and "Technical 1.3.8" bear the restrictive marking "This document contains materials that are company proprietary and may not be redistributed beyond relevant customer users with a need to know" on every page.

20. ICE issued Submitter Notices to Paragon on February 13, 2026, May 15, 2026, and May 27, 2026, in accordance with 6 C.F.R. § 5.8, notifying it that a third party has requested copies of its business information and providing it with the opportunity to respond. Paragon responded to all three Submitter Notices. In each response, Paragon confirmed that it considered the information confidential and proprietary and that it was provided to DHS subject to an

express claim of confidentiality and with a clear and reasonable expectation that DHS and ICE would maintain their confidentiality.

21. When contractors provide confidential business information to ICE, there is an implied assurance of confidentiality that their proprietary data will be safeguarded and not disclosed publicly because this is how ICE has historically treated this type of information. ICE customarily treats this type of information as confidential and does not release it to the general public. This assurance is essential to fostering trust between the government and private entities, ensuring that vendors feel secure in sharing the detailed information necessary for effective procurement.

22. Disclosure of this information would cause foreseeable harm to the corporation's business and economic interests because its business competitors could use this information to evaluate and replicate the product, or aspects of the product, and the corporation's business methods and create or tailor competing products or proposals, thereby undercutting the corporation's pricing or market position. Disclosure of nonpublic pricing information or cost-related information could allow competitors to submit lower-priced offers to undercut Paragon's competitive advantage in the marketplace. Disclosure could also impair the corporation's ability to negotiate competitively with current and prospective customers by revealing information that is not otherwise publicly available about its product offerings, capabilities, and pricing. Customers, competitors and other market participants could use the information to seek more favorable commercial terms. The release of this information would likely dimmish the value of the corporation's proprietary information, weaken its competitive position and cause foreseeable harm.

23. Paragon developed and maintains this information as part of its commercial operations and does not make it publicly available. Disclosure would provide its competitors with confidential and commercially valuable information that could diminish Paragon's competitive position including, reducing potential sales and market share, and impairing its ability to negotiate favorable contract terms. This would cause economic harm to the corporation. Public disclosure of this information could discourage it and all future vendors from participating in future government contracts due to concerns that their proprietary information will be exposed to competitors or the general public. This could undermine ICE's ability to negotiate future contracts, secure competitive pricing, and ensure cost-effective procurement.

24. Disclosure of proprietary financial and commercial information would harm the competitive position of a private entity and compromise the integrity of the procurement process. Therefore, ICE has appropriately applied Exemption 4 to protect this sensitive information.

**B. FOIA Exemption 5 U.S.C. § 552(b)(7) Threshold**

25. 5 U.S.C. § 552(b)(7) establishes a threshold requirement that, to withhold information based on any of its subparts, the records or information must be compiled for law enforcement purposes.

26. The information for which FOIA Exemption (b)(7) has been asserted in the instant matter satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act (INA), codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. See 8 U.S.C. § 1103. ICE, a component of DHS, enforces provisions of the INA including identifying, arresting, detaining and removing noncitizens subject to removal under federal law.

27. Homeland Security Investigations (HSI) is the principal investigative component of DHS. HSI conducts federal criminal investigations into the illegal movement of people, goods, money, contraband, weapons and sensitive technology into, and out of and through the United States. HSI's investigations include drug and weapons smuggling, cyber and financial crime, illegal technology exports and intellectual property crime. HSI also investigates crimes of exploitation including child exploitation, human trafficking, financial fraud and other crimes. In addition to ICE criminal investigations, HSI oversees the agency's international affairs operations and law enforcement intelligence functions.

28. The records and information at issue in this matter pertain to a law enforcement product for potential use in HSI's law enforcement mission. Therefore, the ICE records responsive to Plaintiffs' FOIA request were compiled for law enforcement purposes and meet the threshold requirement of FOIA Exemption (b)(7).

**C. FOIA Exemption (b)(7)(E)**

29. 5 U.S.C. § 552(b)(7)(E) affords protection to law enforcement information that would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

30. Here, ICE has applied Exemption 7(E) to law enforcement sensitive information, specifically to information about a product intended to support HSI's law enforcement investigations and operations including information about the product's capabilities, usages, and design. Disclosure of this information could reveal specific law enforcement techniques, technologies, capabilities, operational priorities, or investigative methods that ICE is considering or may employ. Releasing this information could allow individuals seeking to evade law

enforcement investigation to determine which capabilities ICE may employ and may use to adjust their behavior, exploit perceived gaps, or otherwise reduce the effectiveness of current or future law enforcement operations. Therefore, the use of Exemption 7(E) is necessary to protect these law enforcement techniques and procedures from disclosure, which could otherwise facilitate circumvention of the law and create risks to operational security.

## V. SEGREGABILITY

31. 5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

32. A line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.

33. With respect to the records, all information was found to be exempt under FOIA exemptions (b)(4), (b)(6), (b)(7)(C), (b)(7)(E) and (b)(7)(F). ICE did not withhold any information on the ground that it was not exempt but could not be reasonably segregated from the exempt information. When making this determination, ICE applied the foreseeable harm standard.

## VI. JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.

Signed this 19th day of November 2026.

KENNETH N CLARK Digitally signed by KENNETH N CLARK Date: 2026.11.19 10:19:31 -05'00'

Kenneth N. Clark, Ph.D.
Assistant Director
Office of Information Governance and Privacy
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement

500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009