**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DARK MODE, LLC, *d/b/a* 404 Media,

Plaintiff,

v.

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,

Defendant.

Civil Action No.: 1:25-cv-3357-APM

**DECLARATION OF ANDREW BOYD**

I, Andrew Boyd, declare pursuant to 28 U.S.C. § 1746:

1. I am over the age of eighteen (18) and of sound mind. I am the Chief Executive Officer ("CEO") of REDLattice. This Declaration is based on my personal knowledge in my capacity as CEO of REDLattice and as the person responsible for overseeing all high-level operations and deployments of the technical and software tools at issue.

2. REDLattice is a cybersecurity company based in the United States. In 2024, REDLattice acquired Paragon Solutions (US), Inc. ("Paragon"). Paragon is a software company certified to conduct business in Virginia that functions as a subsidiary of Paragon Solutions, Ltd.

3. In September 2024, following a public procurement process in which Paragon submitted a response ("the Response") to an RFP issued by the Department of Homeland Security ("DHS") Homeland Security Investigations ("HSI"), Paragon was awarded a contract (the "Contract") (Award ID 70CTD024P00000012), to provide certain software and software-related services to DHS and U.S. Immigration and Customs Enforcement ("ICE").

4. In my role, I oversee all aspects of the business of Paragon. This includes overseeing all staff and operations regarding commercial storage system vendors, Paragon systems

and workstations, coordination with government contractors, management of personnel responsible for fulfilling government contracts, confidential work product, company and personnel information, software licenses, pay schedules, and more.

5. In my role, I am responsible for understanding and weighing all commercial implications of any disclosure of Paragon's confidential commercial information.

6. I have been on the Board of REDLattice since November 2023 and served in my CEO position since August 2025.

7. I am aware that Plaintiff submitted a Freedom of Information Act ("FOIA") request to ICE on October 22, 2024, which sought information relating to Award ID 70CTD024P00000012, including certain procurement and contract-related documents.

8. I am aware that ICE made its final release of records on July 2, 2026.

9. Plaintiff's request concerned a number of documents submitted by Paragon or containing confidential business information provided by Paragon: Paragon's RFP response for the Contract, the Contract itself, and related Contract documents (collectively, the "Documents").

10. Over the last calendar year, Paragon has requested a number of redactions to these documents based on the fact that they contain confidential commercial information ("CCI") that qualifies for exemption from release under FOIA Exemption 4. In view of the fact that Paragon believes that the CCI is exempt from release under FOIA Exemption 4, Paragon has worked with representatives at DHS to request that such CCI be redacted and not publicly released. I have been involved in each of those requests in order to confirm what information in the Documents Paragon believes is exempt from release under FOIA Exemption 4.

11. Paragon shared the Documents and CCI at issue only on the basis of Paragon's clear and reasonable expectation that DHS and ICE would treat them as confidential. Paragon's

RFP submission stated clearly and repeatedly that it "contains materials that are company proprietary and may not be redistributed beyond relevant customer users with a need to know." The Release Notes similarly stated they are "proprietary and contain[] confidential business information," and that the materials contained therein "should not be viewed by or otherwise shared with any party other than the intended recipient." The Release Notes are also marked with the legend "Proprietary—Controlled."

12. The Documents contain CCI.

13. In my view, the final release of records on July 2, 2026, correctly redacted Paragon's CCI in the requested records. Below, I address four specific types of CCI included in the Documents, and describe the commercial risk of releasing such CCI.

14. **Commercial Storage System Vendors**. Paragon's vendors and their work are confidential. The Documents detail which vendors Paragon uses for CUI-compliant commercial storage systems of confidential government data, as well as the specific storage- and redaction-related tasks Paragon uses respective vendors for and in which geographies. Bates # REL0000217046 at Page 7. Paragon does not publicly disclose its preferred vendors or work by geography.

15. Dissemination of this confidential information presents a heavy risk of harming Paragon's commercial relationships not only with the vendors named in the Documents, but of other competitor vendors who are not named, and whom Paragon has not selected for these services. Disclosure would also provide Paragon's competitors with insight into Paragon's commercial operations and its strategic management of vendor relationships, which risks eroding Paragon's competitive advantage. For example, such competitors could seek to establish their own relationships with Paragon's preferred vendors, or seek to undermine Paragon's own relationships.

Public release of this information could also allow competitors to reverse engineer Paragon's network of product offerings and vendor relationships, which would result in clear commercial harm to Paragon.

16. **Paragon Systems and Technical Specifications**. The Documents disclose the number of Paragon systems and workstations that the Contract covers, as well as details regarding certain technical aspects of the product. Bates # REL0000217069. Paragon strictly protects the confidentiality of such information.

17. Combined with the Contract's total price, the Documents' information about systems and workstations can easily be used by competitors to roughly estimate Paragon's pricing scheme and strategy for this type of products. This information could also be used to glean information about Paragon's proprietary ways of working and staffing for similar contracts. In this way, the public disclosure of this information could result in commercial harm to Paragon by allowing potential competitors to copy or undercut Paragon's pricing structure, staffing approach, or technical delivery.

18. **Work Product Version Numbers and Release Notes**. Paragon keeps confidential its iterations of key work product and the details of the features of the versions of its products. The Documents include multiple references to the version numbers of Paragon's Release Notes and Supply Chain Risk Management Plan for the Contract, as well as the Release Notes themselves. Bates # REL0000217069.

19. Dissemination of Release Notes would give competitors direct access to Paragon's work product, harming Paragon's position in the marketplace. Dissemination of Paragon's work product version numbers can be used by competitors, critics, and other third-parties to make uncontextualized and ill-informed estimates of the frequency and sequence of Paragon's revisions

to its work product, and to compare which iterations of its work product Paragon has used for different customers (assuming the existence of other Paragon contracts, such as the Contract, with similar work product version numbers are disclosed). This in turn could harm Paragon's global reputation and erode Paragon's competitive edge if competitors are able thereby to estimate how frequently and in what potential patterns Paragon updates or adapts its work product for different customers.

20. **Paragon's Pricing Model and Performance-Based Pay Schedule**. Paragon keeps confidential its compensation arrangements with customers. The Documents contain detailed information regarding the performance-based pay schedule governing compensation under the Contract. Bates # REL0000217044. This information reflects Paragon's proprietary approach to incentivizing and measuring performance outcomes, which Paragon has developed over years of experience delivering services in this sector. This information reflects Paragon's internal pricing strategy and operations as it pertains to agreements or contracts with the Federal Government.

21. Disclosure of the performance-based pay schedule would provide Paragon's competitors with direct insight into how Paragon structures its pricing. Competitors could use this information to craft bids designed to undercut Paragon's pricing or to replicate Paragon's structure. Paragon strictly protects the confidentiality of its pricing methodologies and compensation frameworks, and public disclosure of this information risks reducing Paragon's competitive advantage vis-à-vis Paragon's competitors.

22. In my view, disclosure of the CCI above would result in commercial or financial harm to Paragon for the reasons stated above.

23. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 20, 2026

Respectfully Submitted,

Signed by:

/s/ Andrew G Boyd

43F8C36073AC4DD...

Andrew Boyd